J-S19029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSICA JAKOBOVICH, | : | |
| | : | |
| Appellant. | : | No. 2381 EDA 2018 |

Appeal from the Order Entered, July 13, 2018,
in the Court of Common Pleas of Monroe County,
Criminal Division at No(s): CP-45-SA-0000070-2017.

BEFORE: LAZARUS, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED MAY 29, 2019**

Appellant, Jessica Jakobovich[1] appeals from the order denying her "Petition for Extraordinary Relief." The trial court deemed Appellant's filing to be a Post-Conviction Relief Act[2] (PCRA) petition over which it had no jurisdiction. We agree and affirm the order denying relief.

The trial judge related the factual background of this matter as follows:

> this case involves a non-traffic citation issued to [Appellant] by Gregory Jordan of the Pennsylvania Society for the Prevention of Cruelty to Animals ("PSPCA") on April 11, 2017. The summary citation . . . pertained to the care of a

---

[1] In her petition for extraordinary relief, Appellant avers that her surname is actually spelled "Jacobovich." **See** Petition, 4/27/18, at 1. For ease of discussion, we refer to Ms. Jacobovich as "Appellant."

[2] 42 Pa.C.S.A. §§ 9541-9546.

---

* Retired Senior Judge assigned to the Superior Court.

dog owned by [Appellant, who] entered a plea before this Court, so there are no facts of record.

According to [Appellant's] motion, the underlying facts began on December 16, 2016 when PSPCA conducted a welfare check for [her] pit bull, Layla, who was staying at the home of [Appellant's] father.

[Her] father was found unconscious, and several dogs, including Layla, were removed from the property while he was taken for medical treatment. Layla was eventually taken to the PSPCA facility in Philadelphia. [Appellant] alleges she entered into negotiations with PSPCA for the return of Layla, but when she refused to sign the dog over to the organization, PSPCA filed the citation at issue. The citation was filed under 18 Pa. C.S.A. §5511(c)—cruelty to animals. The citation alleges [when] Layla was brought into PSCPA custody, [Appellant] had failed to seek proper veterinary care for her and that the dog was suffering from ear infections and flea associated dermatitis.

[Appellant] then appeared *pro se* before MDJ [Thomas E.] Olsen, where she was convicted of the offense. On June 6, 2017, [she] filed a counseled appeal from summary-criminal conviction with the trial court. A hearing was originally scheduled [for] August 17, 2017. [Appellant] requested and was granted two continuances due to her ill health and the need to conduct discovery.

The case was finally called for hearing on December 21, 2017. At that time, [Appellant] entered a *nolo contendere* plea, in which a fine was imposed of $50.00, she agreed to pay restitution in the amount of $1,800.00 to PSPCA, and that she agreed not to own or possess an animal for a period of 90 days. As part of the plea bargain, Layla was to be returned to [Appellant's] mother immediately. [Appellant] now alleges that on the day of the hearing the Commonwealth did not provide her with medical records while in the care of PSPCA, except for a restitution bill generally stating what treatments Layla had received while in PSPCA's care. [Appellant] alleges that if she had those records, she would not have entered her plea.

[Appellant] admits Layla was returned to [her] mother as bargained for along with a rabies certificate. Upon the request of [Appellant's] counsel, PSPCA also forwarded a

detailed record of Layla's medical treatment while in their care on January 2, 2018. [Appellant] now claims that those medical records are exculpatory, because they show that Layla had to be treated for the same or similar conditions while in PSPCA care as were alleged in the citation. Additionally . . . [Appellant] now argues that the failure to provide this "after-discovered evidence" violated her Due Process rights as it is material to the issue of guilt and punishment. [Her] Motion for Extraordinary Relief asks the Court to vacate her *nolo contendere* plea, dismiss the case against her, and return or vacate any further responsibility she has for fines, costs, or restitution.

Trial Court Opinion, 7/13/18, at 1-3.

The trial court treated Appellant's petition as one for PCRA relief. However, the court denied the petition on July 13, 2018, concluding that the petition was untimely and jurisdictionally barred under the PCRA. She appealed from that order.

This Court issued a rule to show cause why we should not quash the appeal as untimely, because the trial court entered the judgment of sentence on December 21, 2017 – four months before she appealed. In reply to our rule, Appellant claims that she timely appealed from the order denying her "Petition for Extraordinary Relief, which, in this case, is analogous to a Motion for Habeas Corpus . . . ." Appellant's Response to Rule to Show Cause at 1.

Appellant raises four issues in her brief regarding the merits of her petition.[3] However, the dispositive issue on appeal is whether Appellant filed

_____

[3] Appellant's appellate issues are:

a PCRA petition over which the trial court had no jurisdiction. The trial court raised the jurisdiction issue *sua sponte.* This Court "may always consider that question on our own motion . . . Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review plenary." ***Kapcsos v. Benshoff***, 194 A.3d 139, 141 (Pa. Super. 2018) (*en banc*) (citations and some punctuation omitted).

We agree with Appellant that she timely appealed within 30 days of the order denying her petition; thus, this Court will not quash her appeal on those grounds. However, her attempt to elevate the petition to the level of one for *habeas corpus*[4] fails.

A petition for *habeas corpus* commences a new civil action and has a civil remedy. ***See*** 18 Standard Pa. Practice 2d § 98:7 at 205. The writ's seeker sues, in the name of the Commonwealth, a defendant who is allegedly

1. Did the trial court err by finding that Appellant should have filed a direct appeal, rather than waiting four months after sentencing to file her petition?

2. Did the trial court err by opining that a Motion for Reconsideration was an appropriate method for claiming after-discovered evidence in a summary case?

3. Did the trial court err by dismissing Appellant's petition as untimely under Pa.R.Crim.P. 720(c)?

4. Did the trial court err by holding that Appellant's after-discovered evidence did not constitute a violation of ***Brady v. Maryland***, 373 U.S. 83 (1963)?

***See*** Appellant's Brief at 4-5. The Commonwealth has not filed a brief, nor did it respond to Appellant's petition in the trial court.

[4] Latin, literally translating to "Have the body."

holding a person in custody without probable cause. ***See, e.g., Commonwealth ex rel. Levine v. Fair***, 146 A.2d 834 (Pa. 1958). If the writ issues, it "requires the body of the person alleged to be unlawfully held in custody . . . to be brought before the court so that appropriate judgment may be rendered upon judicial inquiry into the alleged, unlawful restraint." 18 Standard Pa. Practice 2d §98:1 at 201. The defendant/jailer must make a *prima facie* showing that the imprisonment is lawful, or the court will order the prisoner's release.

Appellant's petition sought none of those things, because she was never jailed or deprived of her liberty. The court's judgment of sentence deprived her of property – i.e., it imposed a fine and ordered her to make restitution. Thus, she may not lay claim to a writ of *habeas corpus*, and she cannot analogize her "Petition for Extraordinary Relief" to a request for one.

Appellant has filed a PCRA petition under the erroneous heading of a "Petition for Extraordinary Relief." There is nothing "extraordinary" about her petition. She filed it within one year of her sentence becoming final, just as one would with any, timely PCRA. ***See*** 42 Pa.C.S.A. § 9544(b)(1). In this petition, she makes arguments about after-discovered-evidence and violations of ***Brady v. Maryland***, 373 U.S. 83 (1963), which are arguments common to the PCRA petitions of persons who pleaded *nolo contendere* (or guilty) and wish to rescind their pleas. ***See*** 42 Pa.C.S.A. § 9543(a)(2)(i),(iii). Finally, Appellant requests post-conviction relief, i.e. the same relief that a PCRA petitioner would request – namely, the vacating of her sentence, the

rescinding of her plea, and the dismissal of the Commonwealth's case. ***See***

42 Pa.C.S.A. § 9546(a). If a petition was filed like a PCRA, if it argues like a

PCRA, and if it seeks relief like a PCRA, it is a PCRA.

Accordingly, we agree with the trial court's conclusion that Appellant's

petition was a PCRA petition, over which it had no jurisdiction. The court

correctly held that Appellant:

> filed her petition in the context of what appears to be a
> request for a PCRA, as noted above. A PCRA can only be
> filed when a defendant is serving a sentence of
> incarceration, or is on probation or parole. ***See*** 42 Pa.C.S.A.
> § 9543(a)(1); ***Commonwealth v. Volk***, 138 A.3d 659, (Pa.
> Super. 2016). Here, [Appellant] is not incarcerated, nor is
> she on probation or parole. Therefore, this Court is without
> jurisdiction to hear a claim for PCRA relief.

Trial Court Opinion, 7/13/18, at 9. Because the trial court lacked jurisdiction

to hear Appellant's PCRA petition, it rightly denied her relief.

As a final note, Appellant's argument that filing this Petition for

Extraordinary Relief was the only way she could address the errors of the trial

court is without merit. Nothing in the record indicates that Appellant used the

time during her two continuances to seek discovery of the dog's medical

records from the Pennsylvania Society for the Prevention of Cruelty to Animals

(PSPCA).[5]   Inexplicably, she did not request the records until after the

---

[5] Counsel entered her appearance on June 6, 2018 when she filed an appeal
from the Magisterial District Court. The trial did not take place until December
22, 2018. The trial court opinion indicates some pre-trial discovery was
denied, but was not mandated by ***Brady***. T.C.O., 7/13/18, at *7, n.3. A

hearing. She also does not explain why, after receiving those records on January 2, 2018, she delayed another three-and-a-half months – until April 27, 2018 – to file her petition for relief. She could have requested relief from the trial court within 30 days of her hearing, while the court still had jurisdiction, but she did not. **See** 42 Pa.C.S.A. § 5505 (allowing a court to modify or rescind any order within 30 days of its entry). Thus, as the trial court found, any way we analyze this, Appellant's request for relief is untimely.

Order affirmed.

Judge Lazarus joins the Memorandum.

Judge Strassburger concurs in the result.

_____

**Brady** violation consists of three elements: (1) suppression by the prosecution (2) of evidence, whether exculpatory or impeaching, favorable to the defendant, (3) to the prejudice of the defendant. **Com. v. Tedford**, 960 A.2d 1, 30 (Pa. 2008) (citation omitted). Significantly, "[n]o violation occurs if the evidence at issue is available to the defense from non-governmental sources." **Id**. This information was readily available to the defense directly from PSPCA, a non-profit corporation. Indeed, counsel requested the medical records from PSPCA 5 days **after** the trial and received the information 7 days later. Nothing of record indicates that the Commonwealth had the medical records in its possession; it appears the Commonwealth only offered the medical bills into evidence to support its claim for restitution.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/29/19